UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No.: 3:21-CR-156-KAC-DCP-2 |
| ORAINE LIVINGSTON CHRISTIE, ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

This case is before the Court on Defendant Oraine Livingston Christie's (2) "Supplemental Motion for New Trial Pursuant to Rule 33 of the Rules of Criminal Procedure" [Doc. 145]. Defendant "requests a retrial on the basis of prosecutorial misconduct" and the "cumulative error doctrine" [Doc. 145 at 1, 3]. Because Defendant has identified only one harmless error, the Court **DENIES** his Motion.

### I.  BACKGROUND

On December 1, 2021, Defendant and his codefendant Shemar Newland were involved in a traffic stop in Knoxville, Tennessee. Law enforcement searched the vehicle Defendant was driving and recovered approximately seven (7) pounds of methamphetamine and several firearms [Doc. 116]. Following Defendant's arrest, the grand jury returned an indictment charging Defendant with four (4) counts: (1) conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of methamphetamine; (2) possession of a firearm in furtherance of Count One, aided and abetted by Newland; (3) possession with intent to distribute fifty (50) grams or more of methamphetamine, aided and abetted by Newland; and (4) possession of a firearm in furtherance of Count Three, aided and abetted by Newland [Doc. 15].

At trial, the United States entered several exhibits containing Defendant's text messages. Defendant and the United States stipulated that these exhibits "are true and accurate copies of the excerpts of the contents of the iPhone 11, belonging to Oraine Christie" and that the "exhibits are admissible" [U.S. Ex. 25 ¶¶ 2, 4]. In the text messages Defendant refers to "ice cream," "blue M&Ms," and "2 zips" [U.S. Exs. 203-D; 204-H; 204-M]. Special Agent Jacob Wilson testified that these were references to methamphetamine, pressed fentanyl, and marijuana, respectively [Doc. 121]. The United States also presented texts referring to "the 7" and "the stuff" to show Defendant was attempting to arrange a sale of the seven (7) pounds of methamphetamine found in the back of the vehicle he was driving [*See* U.S. Ex. 203-F].

Defendant chose to testify at trial. Defendant testified that he was unaware Newland put the methamphetamine and guns into the car, and that Defendant was not a drug dealer [Doc. 121]. He further testified that he was a club promoter and the text messages referring to blue M&Ms were related to sourcing literal blue M&Ms—the chocolate candy, not pressed fentanyl—to turn liquor blue for customers involved in the Crips gang [*Id.*]. Defendant also testified that as a promoter he arranged for his customers to purchase marijuana [*Id.*].

In closing, the United States argued to the jury:

> Use your common sense as to whether that was likely to have happened. Does it make sense that he's talking about blue M&Ms specifically and that blue M&Ms happen to be a street reference to pressed fentanyl; that that's just a coincidence that that's the color of M&Ms that he happens to specialize in supplying?
> Does it make sense that he has a contact named Cream Link and that cream happens to be a reference to methamphetamine? Those are a lot of coincidences in his story to explain what happened here.
> And it also doesn't stay consistent; right? He said on cross-examination that he was absolutely not a drug dealer. And then he—I'm sorry, he said that on direct at the very end. He said he's absolutely not a drug dealer. And on cross-examination, I did a drug sale. ***I did arrange for two ounces of methamphetamine to be purchased. . . .***

[*Id.* (emphasis added)]. Defendant's counsel promptly objected, and the Court held a sidebar outside the hearing of the jury.

During the sidebar Defendant's counsel expounded that the United States "said that [Defendant] admitted to selling two ounces of meth. He did not" [*Id.*]. The Court sustained that objection and clarified that Defendant previously admitted on cross-examination that "he was part of a sale of two somethings of marijuana" [*Id.*]. The United States agreed that it misspoke and should have referred to marijuana, not methamphetamine [*Id.*]. In sustaining the objection, the Court permitted the United States to correct its statement, and asked if Defendant wanted the Court to provide a limiting instruction to the jury [*Id.*]. Defendant declined, saying the correction from the United States in front of the jury would be sufficient [*Id.*]. Defendant was concerned that an instruction in addition to the correction would just "draw more attention to it" [*See* Doc. 145 at 1]. After the sidebar concluded, the Court told the jury, "I'm going to sustain the objection that was just raised. [The Assistant United States Attorney] is going to correct something in front of you for the record" [Doc. 121]. The United States continued its closing argument:

> Ladies and gentlemen, I apologize. I misspoke. I mistakenly referred to two ounces of methamphetamine. That's not what the defendant testified to. He referred to two somethings of marijuana. And that is what I meant to say, and I apologize for that mistake

[*Id*]. The Court later instructed the jury "[t]he lawyers' statements and arguments are not evidence" [*Id.*].

The jury returned a verdict of guilty on all four charges [Doc. 126]. Defendant filed a timely motion under Federal Rule of Criminal Procedure 33 for a new trial [Doc. 145]. Defendant asserts that a new trial is warranted on two grounds. **First**, he argues it was prosecutorial misconduct when the United States mischaracterized Defendant's testimony in closing arguments. **Second**, even if the prosecutorial misconduct was harmless, he argues that, it in combination with

references to "other bad acts" justifies a new trial under the "cumulative error doctrine" [Doc. 145 at 3-4].

## II. ANALYSIS

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion," the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "interest of justice" requires a new trial if "a substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

### A. Prosecutorial Misconduct

The Court analyzes claims of prosecutorial misconduct in two steps. The Court first considers "whether the prosecutor's statements were improper." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)). If so, the Court must "consider and weigh four factors in determining whether the impropriety was flagrant." *United States v. Warshak*, 631 F.3d 266, 302 (6th Cir. 2010) (citing *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994)). Specifically, the Court must consider "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id.* If the statements were improper but not flagrant, a new trial may still be warranted if "(1) 'proof of [Defendant's] guilt was not overwhelming,' (2) '[Defendant] objected to the improper remarks,' and (3) 'the court failed to cure the error with an admonishment to the jury.'" *Hall*, 979 at 1119 (citing *Carroll*, 26 F.3d at 1390).

Here, Defendant argues the prosecutorial misconduct is that "[i]n closing arguments, the Government stated that Mr. Christie's texts related to M&Ms showed that he was dealing in

fentanyl," and that the "Defense objected to this statement and a sidebar conference was held" [Doc. 145 at 1]. Defendant conflates two events. The United States did reference blue M&Ms during closing arguments, and the United States separately misstated that the Defendant admitted to selling methamphetamine, to which the Defendant objected [Doc. 121]. Out of an abundance of caution the Court examines both statements.

### 1. It Was Not Improper For The United States To Argue That The Jury Should Discount Defendant's Testimony About Blue M&Ms.

"It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *United States v. Acosta*, 924 F.3d 288, 302 (6th Cir. 2019) (citing *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005)). To properly argue about a witness's credibility, a prosecutor should "highlight inconsistencies with a 'detailed analysis of the evidence.'" *Id.* at 303 (citing *Hodge*, 426 F.3d at 378). Problematic examples include saying a defendant "is lying to extricate himself from what he's done" or an alibi witness "[s]hould [not] be entitled to any credibility whatsoever," when those statements are unaccompanied by analysis of the evidence. *Id.* at 302-03 (quoting *Hodges*, 426 F.3d at 379) (alteration in original).

Here, Defendant agreed that his text messages were admissible [U.S. Ex. 25 ¶¶ 2, 4]. Defendant then testified that he was not a drug dealer [Doc. 121]. The challenged statement is an argument regarding the credibility of Defendant's testimony that he uses literal blue M&Ms to make specialty drinks. Pointing out unlikely or unbelievable portions of Defendant's testimony by comparing it to conflicting evidence in the record is well within the bounds of permissible statements. *See Acosta*, 924 F.3d at 302. And because the Court concludes this argument was not improper, the argument does not support a motion for a new trial. *See Hall*, 979 at 1119.

5

### 2. The United States's Prompt Correction Before The Jury Cured Its Improper Characterization of Defendant's Testimony.

"[I]t is improper for attorneys, especially prosecutors who generally have the confidence of juries, to misstate evidence[.]" *Hall*, 979 F.3d at 1123 (quoting *Carter*, 236 F.3d at 785). Defendant admitted to arranging the sale of marijuana at Parties he hosted [*See* Doc. 121]. The United States agreed during trial, and the United States does not contest now, that it misstated the evidence when it argued Defendant "arranged for two ounces of methamphetamine to be purchased" instead of marijuana [*See* Docs. 121; 146 at 3]. This mischaracterization, though unintentional, was an improper statement.[1] *See Hall*, 979 F.3d at 1123.

None of the relevant factors indicate that the United States's statement was flagrant. *See Carroll*, 26 F.3d at 1390. **First**, the prejudice in this instance was significantly limited, if not entirely cured by the events that immediately followed. Not all improper statements are prejudicial to the Defendant. *Hall*, 979 F.3d at 1120 (citing *Irick v. Bell*, 565 F.3d 315, 326 (6th Cir. 2009)). The Court must consider any measures taken to limit prejudice, such as curative instructions. *See id.* Although sometimes a general instruction read after closing arguments is sufficient cure any prejudice, prejudice is best cured when the Court addresses the issue "at the time of the improper comments." *Compare Acosta*, 924 F.3d at 309 *with Cherry v. Jago*, 722 F.2d 1296, 1300 (6th Cir. 1983).

---

[1] Defendant's Motion might be read to argue that it was improper for the United States to reference marijuana at all [Doc. 146 at 2]. That argument would fail. In referencing Defendant's testimony regarding selling marijuana, the United States was pointing out an inconsistency between Defendant's earlier testimony that he was not a drug dealer and his later testimony that he facilitated the sale of marijuana [Doc. 121]. The United States is permitted to identify inconsistencies in Defendant's own testimony. *See Acosta*, 924 F.3d at 302.

The United States inadvertently characterized Defendant's testimony as an admission of the conduct at the heart of the charges against him—distribution of methamphetamine. This statement, standing alone, would likely be prejudicial to Defendant. *See Carter*, 236 F.3d at 786-87 (prosecutor's mischaracterization of testimony "may very well have caused the jurors" "to question whether they remembered [the witness]'s testimony correctly"). However, that statement did not stand alone, and any prejudice to Defendant was substantially limited, if not eliminated, by the steps that followed.

The Court told the jury that a correction was necessary [Doc. 121]. The United States then identified the improper statement, identified it as an inaccurate representation of Defendant's testimony, and clarified the record for the jury before making any further argument [*Id.*]. Defendant made the strategic decision to refuse the Court's offer of a special instruction in addition to the correction so as "not to draw attention to it" [Doc. 145 at 1]. The Court later instructed the jury that "arguments are not evidence" [Doc. 121]. Both the prompt correction of the record and the Court's later instruction weigh against concluding the United States's statement was flagrant. *See Acosta,* 924 F.3d at 309; *Cherry*, 722 F.2d at 1300.

**Second,** the United States's improper statement was isolated to a single sentence. The statement was not repeated, restated, or thematic to the United States's case. *See Hall*, 979 F.3d at 1107 (citing *Girts v. Yanai*, 501 F.3d 743, 760 (6th Cir. 2007); *United States v. Farag*, 766 F.3d 599, 615-16 (6th Cir. 2014)). **Third**, the record indicates the statement was accidental. In both the sidebar conference and the correction, the United States represented that the statement was accidental [Doc. 121]. Defendant has not disputed this point. These factors also indicate the United State's statement was not flagrant.

7

***Finally***, the evidence against Defendant was overwhelming. Officers found seven (7) pounds of methamphetamine and several firearms in Defendant's vehicle during a traffic stop. Although Defendant testified that he was unaware of the methamphetamine, Newland's testimony and Defendant's text messages indicate the Defendant tried and failed to meet a contact whom he expected to purchase the seven (7) pounds of methamphetamine. During Defendant's initial detention, dash camera footage showed Defendant repeating to himself "Jehovah. Please don't let nobody search that vehicle," indicating that he knew what was in the vehicle and hoped that law enforcement would not find it. With all four factors weighing in favor of the United States, the Court concludes the improper statement was not flagrant. *See Carroll*, 26 F.3d at 1390.

Although the statement was not flagrant, a new trial may still be warranted in limited circumstances. *See Hall*, 979 at 1119. Here, although Defendant objected, the evidence against Defendant was overwhelming, and the Court cured the prejudice to Defendant by requiring the United States to correct the improper statement. Accordingly, a new trial is not warranted.

### B. Cumulative Error

To warrant a new trial under the cumulative error theory "a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Defendant is not entitled to relief under the cumulative error theory if he only identifies a single harmless error. *Id.*

Given the harmless error from closing argument, Defendant has failed to identify additional errors for the Court to consider. Defendant complains that the "text messages related to M&Ms were referred to constantly throughout the trial" [Doc. 145 at 3]. But Defendant has not argued that any exhibit or testimony offered by the United States was inadmissible or should have been

8

excluded. Nor did Defendant raise any objections before or during trial regarding blue M&Ms that may clarify his argument. To the contrary, Defendant stipulated to the admissibility of the text messages referencing M&Ms [*See* U.S. Ex. 25]. And in attempting to respond to this argument, the United States argues that it offered Defendant's text messages as "direct evidence of an ongoing drug conspiracy" [Doc. 146 at 3]. Moreover, Defendant chose to testify about the import of the blue M&Ms—offering his own innocent description of those references. It is Defendant's testimony regarding M&Ms that called his credibility into question. Left with only the harmless error of the United States's mischaracterization of Defendant's testimony in closing, which alone is insufficient to warrant a new trial, the Court cannot conclude that there was cumulative error warranting a new trial . *See Trujillo*, 376 F.3d at 614.

### III. CONCLUSION

For the reasons stated above, Defendant has failed to identify a "substantial legal error" that would justify a new trial. *See Munoz*, 605 F.3d at 373. Accordingly, the Court **DENIES** Defendant Oraine Livingston Christie's (2) "Supplemental Motion for New Trial Pursuant to Rule 33 of the Rules of Criminal Procedure" [Doc. 145]

SO ORDERED.

s/ Katherine A. Crytzer  
KATHERINE A. CRYTZER  
United States District Judge